Nachson DRAIMAN, etc., Plaintiff,

v.

AMERICAN EXPRESS TRAVEL
RELATED SERVICES COM-
PANY, Defendant.

No. 95 C 185.

United States District Court,
N.D. Illinois,
Eastern Division.

July 21, 1995.

Daniel Edelman, Cathleen Combs, James
O. Latturner, Edelman & Combs, Chicago,
IL, for plaintiff.

Charles Bergen, George Dougherty, Ama-
lia Rioja, Grippo & Elden, Chicago, IL, for
defendant.

*MEMORANDUM OPINION
AND ORDER*

SHADUR, Senior District Judge.

Nachson Draiman ("Draiman") brings this
three-count action, both on his own behalf
and for a purported class of similarly situat-
ed individuals, against American Express
Travel Related Services Company ("Ameri-
can Express"). Draiman contends that by
reinstating his cancelled credit card ("Plati-
num Card") without his express permission
and by then seeking to collect a debt for
charges incurred on that resuscitated ac-
count, American Express violated the federal
Truth–in–Lending Act ("TILA," 15 U.S.C.
§§ 1642 and 1643)[1] (Count I), the Illinois
Consumer Fraud Act (the "Illinois Act," 815

---

1. Further citations to TILA's provisions will take   the form "Section ——."

ILCS 505/2) (Count II) and New York General Business Law § 349 (Count III).

Both because of the highly individualized nature of Draiman's situation vis-a-vis American Express (contraindicating its "typicality" as required by Fed.R.Civ.P. ("Rule") 23(a)(3), and perhaps also casting doubt on the adequacy of representation as required by Rule 23(a)(4)) and because Draiman's ability to show true "numerosity" under Rule 23(a)(1) is suspect at best, this action was particularly ill-suited to a prompt determination of its suitability for class-action treatment, as this Court normally pursues under Rule 23(c)(1). Instead this Court has entertained American Express' promptly-filed motion for summary judgment under Rule 56 as to all three counts of the Amended Complaint ("AC").[2] Both sides have complied with this District Court's General Rule ("GR") 12(m) and 12(n),[3] and the motion is fully briefed and ready for decision. For the reasons stated in this memorandum opinion and order, American Express' motion is granted in its entirety.

### Facts [4]

On several occasions between 1988 and 1992 Draiman used his American Express Platinum Card to purchase airline tickets through the Travel Dimensions travel agency. Draiman provided Travel Dimensions with his Platinum Card number, and when he needed tickets he would call and place an order. Travel Dimensions would send the tickets to Draiman and the bill to American Express. American Express would then secure payment from Draiman by including the cost of the tickets plus applicable financing charges in its periodic billing statement.

On January 21, 1992 Draiman cancelled his Platinum Card. Sometime thereafter Draiman deposited an undisclosed sum of money with Travel Dimensions. On July 20, 1992 Draiman purchased four El Al tickets to Israel at $2,077 each, for a total cost of $8,308. Draiman instructed Travel Dimensions to pay for the El Al tickets by drawing upon his deposited funds. Travel Dimensions did not honor that request—instead it charged the amount against the number that it had for Draiman's Platinum Card.[5]

American Express of course knew nothing of Draiman's deposit with, or his instructions to, Travel Dimensions. When American Express received the $8,308 charge from Travel Dimensions, that triggered its reinstatement policy, as set out in these terms in the cardholder agreement:

2. Familiar Rule 56 principles impose on movant American Express the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable"—in the light most favorable to nonmovant Draiman (*Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991)) and cases cited there.

3. GR 12 was designed to facilitate the resolution of Rule 56 motions by highlighting the existence or nonexistence of factual disputes. GR 12(m) requires each Rule 56 movant to submit a statement of assertedly uncontested facts, with citations to the record in support of each fact alleged. Then GR 12(n) requires each nonmoving party to respond point by point, with citations to the record in support of (1) any claimed disputes as to the movant's version of facts and (2) any additional facts that the nonmovant chooses to assert.

4. What follows is not a set of this Court's factual findings, but rather a scenario that credits the pro-Draiman evidence with the required reasonable inferences (see n. 2). With that understanding, the account can avoid the awkward and tedious repetition of such qualifying terms as "allegedly" and "Draiman claims" and the like.

5. Lest it be thought that there is only one side to that aspect of the matter as between Draiman and Travel Dimensions, here is an excerpt from the November 2, 1994 letter from American Express to Draiman's lawyer:

According to documentation in the file, Mr. Draiman had advised Mike Langer the morning of April 17, 1992 (the day of his scheduled travel to Israel) [sic—the actual travel date necessarily had to be later than that, because the tickets were not purchased until July 20 of that year] that he did not want the charges to be billed to his American Express Account and instead wanted to pay the charges directly to the agency. At that time, it was to [sic] late for the Travel Agency to re-issue the tickets. By using the tickets he accepted use of the American Express Account.

For present purposes, however, Draiman's version that Travel Dimensions acted without authority *and* without justification will be credited.

If you ask us to cancel your account, but you continue to use the Card, we will consider such use as your request for reinstatement of your account. If we agree to reinstate your account, this Agreement or any amended or new Agreement we send you will govern your reinstated account.[6]

American Express does not communicate with cardholders to confirm that it is in fact their desire to revive their accounts. In accordance with its written policy (and because the unwritten practice referred to in n. 6 was inapplicable), American Express reinstated Draiman's Platinum Card on August 26, 1992 and billed him $8,308. Draiman later actually used the El Al tickets (each of which had his Platinum Card number printed on its face) to travel to Israel.

On October 15, 1993 Draiman paid American Express $3,399.98 of the $8,308 total and threatened suit if it tried to collect the $4,908.02 balance, citing purported violations of the Fair Credit Billing Act, TILA and other applicable laws. When American Express attempted to collect the debt, the threatened legal action ensued on January 11, 1995 with one twist: Draiman filed not only on his own behalf but also on behalf of a purported class of similarly aggrieved persons.

### Section 1642

■ Draiman first contends that by resuscitating his cancelled Platinum Card without express permission American Express issued an unsolicited credit card in violation of Section 1642:

No credit card shall be issued except in response to a request or application therefor. This prohibition does not apply to the issuance of a credit card in renewal of, or in substitution for, an accepted credit card.

It is unnecessary to decide whether Draiman might at one time have had a valid Section 1642 claim against American Express,[7] for if so he lost it when he failed to bring suit within the applicable statute of limitations.

Section 1640(e) requires that suit be brought within one year of the occurrence of the violation. Any claimed violation took place here on August 26, 1992 when American Express reinstated Draiman's Platinum Card and charged it with the disputed $8,308 (indeed, Draiman himself recognized that when, in the course of later paying American Express just under $4,000, he claimed that the company had violated TILA and other laws by charging his account for the tickets). Draiman did not file this action until January 11, 1995—nearly 2½ years later. Thus any Section 1642 claim is far out of time as a basis for the current suit seeking statutory damages, declaratory relief and attorney's fees. Consequently American Express is entitled to dismissal of the portion of Draiman's Count I TILA claim relating to Section 1642.

### Section 1643

■ Draiman's other TILA-based claim centers on his contention that Travel Dimensions used his credit card without permission. From that he argues that he is entitled to the protection afforded by Section 1643. Under that provision, if certain conditions are met (see Section 1602(o )), there is a $50 limit on the liability of cardholders for charges that are made by third parties without actual, implied or apparent authority *and* from which the cardholder receives no benefit. That Section 1643 argument fails not only on limitations grounds (for Section 1640(c) applies to an alleged Section 1643 claim as well, and any alleged violation of the latter statute also took place when Draiman's account was charged for the El Al tickets) but also (1) because Draiman benefited by flying to Israel with the use of the tickets and (2) because

---

6. [Footnote by this Court] What the agreement did not spell out was American Express' internal practice of classifying cancelled accounts as "derogatory" (covering cards cancelled for reasons of theft, loss, non-payment or other wrongdoing) or otherwise, and of reinstating only accounts that had been cancelled for non-"derogatory" reasons. But as indicated later, that is entirely immaterial to the present dispute.

7. This Court had initially plunged into the analysis in that respect—an analysis that could well be relevant to American Express' counterclaim for the earlier-referred-to $4,908.02 balance of the purchase price of the tickets (see Section 1640(e)). But because any discussion of that analysis would be only dictum on the current motion in any event, it has not been pursued in this opinion.

Travel Dimensions possessed apparent authority to have charged Draiman's Platinum Card. Although the limitations bar would alone suffice to defeat this claim as well, it is worth reviewing those added deficiencies too.

Draiman's assertion that he derived no benefit from the use of his credit card to buy airline tickets *that he then used* is patently frivolous and merits no further discussion. For the answer to the second question (the existence or nonexistence of Travel Dimension's authority), the Federal Reserve Board's Regulation Z (12 C.F.R. Part 226) and Section 226.12(b)(1) of its accompanying Official Staff Interpretations (Supplement I to the Regulations) point to state agency law.

Universal agency law divides the concept of an agent's authority into the same three familiar subcategories (actual, implied or apparent) that are listed in Section 1643. Here Draiman says that he told Travel Dimensions to take the tickets' cost out of his previously-deposited funds. Because no reasonable travel agent would have interpreted that instruction as authorization to charge the customer's credit card (ignoring, that is, the issue referred to in n. 5—as must be done for present purposes), Travel Dimensions plainly lacked both actual and implied authority. That leaves for consideration only the concept of apparent authority.

Apparent authority binds Draiman to the credit card transaction if it was reasonable for American Express to conclude from Draiman's words and actions that he had authorized Travel Dimensions to charge his Platinum Card for the four El Al tickets, even if (as it must be assumed here) Travel Dimensions had in fact been forbidden from doing so (*Gilbert v. Sycamore Mun. Hosp.*, 156 Ill.2d 511, 522–24, 190 Ill.Dec. 758, 764–65, 622 N.E.2d 788, 794–95 (1993); Restatement (Second) of Agency §§ 8, 27 and 49 (1957)). What follows in this opinion therefore focuses on the elements of that reasonableness concept.

What (if anything) had Draiman done to make it appear to American Express that he had authorized Travel Dimensions to charge his account? For starters, he had given Travel Dimensions his Platinum Card number. And perhaps most importantly, he had then over an extended period of time honored various charges to his account that Travel Dimensions had relayed to American Express.

Several state courts treat the voluntary relinquishment of a credit card or voluntary disclosure of a credit card number, in either event for purposes of making an expressly authorized charge, as by itself rendering the cardholder liable for all later charges (*Mastercard v. Town of Newport*, 133 Wis.2d 328, 396 N.W.2d 345, 348 (App.1986); *Standard Oil Co. v. Steele*, 22 Ohio Misc.2d 27, 489 N.E.2d 842, 844 (1985); *Cities Serv. Co. v. Pailet*, 452 So.2d 319, 322 (La.Ct.App.1984); *Martin v. American Express, Inc.*, 361 So.2d 597, 600–01 (Ala.Civ.App.1978)). Those courts place a heavy burden on cardholders to safekeep their accounts and to trust no one, because under that concept about the only way to escape liability for unanticipated charges by a third person is to argue that the card or its number was stolen or was obtained surreptitiously (*Elder–Beerman v. Nagucki*, 55 Ohio App.3d 10, 561 N.E.2d 553 (1988) (per curiam)).

Another view, which would seem to strike a more sensible balance among the several competing interests involved, is that such voluntary relinquishment or disclosure is an important factor to be considered in the context of other conduct and circumstances, especially industry custom, prior course of dealing and the presence or absence of characteristics that tend to distinguish authorized from unauthorized uses (*Towers World Airways, Inc. v. PHH Aviation Sys. Inc.*, 933 F.2d 174, 177–78 (2d Cir.1991); *Blaisdell Lumber Co. v. Horton*, 242 N.J.Super. 98, 575 A.2d 1386, 1389–91 (App.Div.1990); *Vaughn v. United States Nat'l Bank*, 79 Or. App. 172, 718 P.2d 769, 770–71 (1986)). For example, in finding an airplane owner liable for a pilot's fuel purchases made in connection with chartered flights where the owner had granted the pilot permission to use the card only for non-chartered flights, *Towers World Airways*, 933 F.2d at 178 emphasized (1) that it was industry custom to entrust pilots with credit cards to make airplane-related purchases and (2) that because the only thing that distinguished authorized from

unauthorized uses was the identity of the passengers, the credit card agency had no effective way to tell one from the other.

Although Illinois courts appear not to have taken sides in that debate, this Court need not agonize here over a choice in those terms. Under either of those perspectives, Travel Dimensions possessed apparent authority as a matter of law to charge Draiman's Platinum Card account for the four El Al tickets. Draiman had not only given Travel Dimensions his credit card number voluntarily, but an abundance of background circumstances also confirmed to American Express that the travel agency had been authorized to charge his account. First, the extended course of prior dealings among the parties had created the appearance that Travel Dimensions was a competent and responsible ticketing outfit that faithfully executed its customer's orders. Travel Dimensions had charged Draiman's account several times in the past, and Draiman had reimbursed American Express without objection.[8] Second, from what American Express could see there was nothing to distinguish the final transaction from its predecessors: Travel Dimensions was not submitting charges for mink coats and diamond rings, but was simply ordering yet another set of airplane tickets. Third, travel agencies use customer credit cards all the time, and nothing in that settled practice could reasonably be expected to have raised American Express's corporate eyebrow.

In sum, Draiman's Section 1643 claim (like that under Section 1642) must fail on limitations grounds. In addition, Section 1643 does not in any event limit Draiman's liability, both because Travel Dimensions had apparent authority to make the disputed charges and because Draiman benefited thereby (either of those two factors would also render Section 1643 inapplicable—and together they surely do so). Accordingly American Express is also entitled to the dismissal of the balance of Draiman's Count I TILA claim.

*Illinois Act*

■ Draiman next argues that by reinstating his credit card and seeking to collect the $4,908.02 debt American Express violated the Illinois Act's prohibition against deceptive or unfair trade practices (815 ILCS 505/2). Those two adjectives—"deceptive" and "unfair"—will be examined separately.

None of what Draiman ascribes to American Express really involves deception. American Express's reinstatement policy is set out clearly in the cardholder agreement, and its unwritten practice of not reinstating accounts that have been closed for "derogatory" reasons did not affect Draiman and was therefore immaterial. American Express's debt collection efforts were likewise conducted out in the open.

As for whether American Express' conduct constituted an unfair trade practice, Draiman's major problem is that the Illinois Supreme Court has essentially read the word "unfair" out of the statute by limiting the statutory reach to conduct that "defrauds or deceives" (*Laughlin v. Evanston Hosp.,* 133 Ill.2d 374, 389–90, 140 Ill.Dec. 861, 868, 550 N.E.2d 986, 993 (1990); see also *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.,* 214 Ill.App.3d 1073, 1082, 158 Ill.Dec. 185, 190–91, 573 N.E.2d 1370, 1375–76 (5th Dist.1991)). This Court has had prior occasion to comment on that curious reading of the statute (*Kedziora v. Citicorp Nat'l Servs., Inc.,* 780 F.Supp. 516, 532–34 (N.D.Ill. 1991)[9]), and it refrains from any repetition in that regard—except to note that it remains improper for a federal court to second guess Illinois' highest court on a matter of state law. Thus American Express is also entitled to the dismissal of Draiman's Count II Illinois state law claim.

*New York General Business Law*

■ Draiman lastly claims that the same conduct by American Express violated the

---

8. As indicated earlier, there was nothing to put American Express on notice of any unauthorized charges being attempted by Travel Dimensions, or of any falling out between the travel agency and Draiman.

9. Not so coincidentally, *Kedziora* was also a consumer class action brought by the lawyer who is now Draiman's principal counsel.

corresponding New York prohibition against deceptive trade practices (N.Y.Gen.Bus.Law § 349 (McKinney 1988)). Draiman's difficulty in that respect is if anything even more basic than its problem under the Illinois Act. New York's statute (unlike its Illinois counterpart) makes no mention of "unfair" practices, so it is hardly surprising that New York courts require that a defendant's actions must be materially misleading before a cause of action for deceptive trade practices will be recognized (*Varela v. Investors Ins. Holding Corp.*, 81 N.Y.2d 958, 598 N.Y.S.2d 761, 615 N.E.2d 218 (1993) (mem. op.)). Because its actions were not deceptive, American Express is finally entitled to the dismissal of Draiman's Count III New York state law claim.

### *American Express' Counterclaim*

Although the ruling in the preceding section has used the term "finally," that is not literally true: American Express has earlier responded to Draiman's AC with a three-count Counterclaim seeking to collect the outstanding $4,908.02—an attempt that had not been made the subject either of (1) a lawsuit during the extended time period since Draiman failed to pay the charge against his account or (2) the request for relief or the discussion in the inch-thick filings (including no fewer than five memoranda!) on the current motion. Because of the small amount involved, that Counterclaim found its way into this federal court via piggyback—under the supplemental jurisdiction auspices of 28 U.S.C. § 1367.

With Draiman's only federal-question claim now having been dismissed, the jurisdictional support for the Counterclaim has been removed. That leaves for decision whether this Court (1) should follow the most common practice of dismissing without prejudice such remaining state law claim that lacks any federal jurisdictional underpinning (as counseled by *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) and its progeny) or (2) should instead act as a small claims court for resolution of a claim that American Express—when left to its own devices—had apparently not viewed as meriting the filing of a lawsuit.

Frankly this Court is presently inclined to the first of those alternatives, but instead of ruling on that issue in this opinion it will set this action for an early status hearing. If at that time the parties have not resolved the small claim as between themselves, both sides' counsel should come prepared to address the appropriate disposition of the remaining dispute embodied in American Express' Counterclaim.

### *Conclusion*

As to all aspects of Draiman's Amended Complaint, there are no genuine issues of material fact and American Express is entitled to a judgment as a matter of law. Accordingly AC Counts I, II and III are dismissed. This action is set for a further status hearing at 8:45 a.m. July 28, 1995.