**R.C. OLMSTEAD, INC., Plaintiff,**

v.

**CU INTERFACE, LLC, et al., Defendant.**

**No. 5:08CV234.**

United States District Court, N.D. Ohio, Eastern Division.

Nov. 7, 2008.

Daniel J. Clark, Vorys, Sater, Seymour & Pease, Columbus, OH, David A. Campbell, III, Vorys, Sater, Seymour & Pease, Cleveland, OH for Plaintiff.

Andrew M. Holford, Columbus, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

SARA LIOI, District Judge.

This Memorandum Opinion and Order arises out of the Joint Motion to Bar Plaintiff's use of Robert Reid's Report (Doc. No. 55.) filed by Defendants CU Interface, LLC and Canton School Employees Federal Credit Union (collectively, "Defendants"). For the reasons that follow, Defendants' motion is **GRANTED.**

## I. FACTUAL AND PROCEDURAL HISTORY

The relevant facts for purposes of this opinion are as follows. As per this Court's Order of August 14, 2008, Defendants were required to allow Plaintiff to provide an expert to examine CU Interface's Circa 2005 CUDP software at the place of business of Canton School Employees Federal Credit Union. (Doc. No. 34.) Plaintiff's expert, Robert Reid ("Reid"), examined

the software on September 8, 2008. (*See* Minutes of Proceedings, 9/8/2008.)

On September 17, 2008, Plaintiff provided Defendants with its expert's report ("Reid's report"), dated September 14, 2008, by email. (Doc. No. 47, at 2.)[1] The expert report is about one and one-half pages long, references no documents or exhibits (including any screen shots or documents provided by the expert with his opinion), and contains a single nine-sentence paragraph stating the expert's opinion and some of the basis for it. (*See* Doc. No. 47, Ex. A (full report of Robert Reid).) Reid also included an attachment to his report totaling 197 pages, consisting of all the data he alleges was used to form his conclusions. (*See* Pl. Mem. Opp. Def. Mot. to Bar, Doc. No. 62, Ex. A (Reid report attachments).) The attachment contains both screen shots of the RCO software and screen shots of the Circa 2005 CUDP software. (*See id.*) Screen shots of the RCO software total 141 pages, and screen shots of the CUDP software total 56 pages. (*See id.*) There is no table of contents for the veritable tome of screen shots, and the only semblance of order is that the RCO screen shots are separated from the CUDP screen shots.[2]

On October 16, 2008, Defendants filed a motion to bar Plaintiff's use of Reid's report, alleging that it does not comport with either Federal Rule of Civil Procedure 26(a) or Federal Rules of Evidence 402

1. Defendants' motion (Doc. No. 47.) does not contain page numbers, so the Court is treating the cover page as page 1, with the pages numbering successively until the Exhibits.

2. Exhibit A of Plaintiff's Memorandum in Opposition contains Robert Reid's report and his attachments. Exhibit A is, rather confusingly, divided into its own Exhibits, which this Court will refer to as "Sub–Exhibits." Sub–Exhibit A is a Declaration of Robert J. Reid, which was created exclusively for Plaintiff's Memorandum in Opposition. Sub–Exhibit B

is the full text of Reid's one-and-one-half page report. Sub–Exhibit C is the 141 pages of screen shots from review of RCO software. Sub–Exhibit D is the 56 pages of screen shots from review of the Circa 2005 CUDP software. Plaintiff never bothered to provide a table of contents or index to the massive, subdivided Exhibit A. Apparently Defendants received Reid's report and attachments in more or less the same form as presented in Plaintiff's Memorandum of Opposition, minus Reid's Declaration.

and 702. (Doc. No. 55.) In that motion, Defendants also requested an accelerated briefing schedule, requesting that Plaintiff file an opposition memorandum no later than October 23, 2008. (Def. Mem. Supp. Mot. to Bar, at 5.) This Court granted Defendants' motion with respect to the accelerated briefing schedule only, and required Plaintiff to file an opposition by October 27, 2008.[3] (*See* Order of 10/17/2008.) Plaintiff filed a lengthy, and largely irrelevant, Memorandum in Opposition on October 27, 2008.[4] (Doc. No. 62.) Defendant filed a reply on October 28, 2008. (Doc. No. 65.) The issue is now ripe for this Court's review.

## II. LAW AND ANALYSIS

Federal Rule 26(a) requires that any expert report must contain the following:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the data or other information considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed.R.Civ.P. 26(a)(2)(B). These requirements are to be taken very seriously. Rule 26(a) was intended not only to prevent surprise to opposing counsel, but to decrease the need for expert depositions and thereby conserve the resources of both parties. *See* Fed.R.Civ.P. 26 Advisory Committee Notes (1993); *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n. 6 (7th Cir.1998).

■ Federal Rule 37(c)(1) states that "[i]f a party fails to provide information [ . . . ] as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is

**3.** Local Rules permit a party to submit a Memorandum in Opposition to a non-dispositive motion within 14 days unless otherwise ordered by the Court. Local Rule 7.1(d). In this case, this Court granted Plaintiff 10 days. The Court found Defendants' request for an accelerated briefing schedule justified given the relatively straightforward nature of Defendants' motion, i.e., that Reid's report did not satisfy Federal Rule of Civil Procedure 26(a) or Federal Evidence Rules 402 and 702.

**4.** Plaintiff's Memorandum in Opposition is 16 pages long, and only three of those pages analyze whether Reid's report complies with the Federal Rules of Civil Procedure and the Federal Rules of Evidence—the rest of the Memorandum contains a lengthy statement of facts, and evidence justifying those alleged facts, that Plaintiff asserts are relevant to its claims. As Defendants rightly point out, however, this "tour[ ] [of] an elaborate theory of

what [Plaintiff] apparently expects to allege at trial" has no relevance to the narrow issue of whether the use of Reid's report should be barred pursuant to Rules 26(a)(2)(B) and 37(c)(1). (Def. Mem. Supp. Mot. to Bar, at 1.)

The Court also notes that Plaintiff's Memorandum in Opposition violates the local rules. Local Rule 7.1(f) states explicitly that memoranda in opposition for non-dispositive motions may not exceed 15 pages in length without leave of Court; further, those that do exceed 15 pages must have a table of contents, a table of authorities, a brief statement of the issue(s) to be decided, and a summary of the argument. Plaintiff's Memorandum exceeds 15 pages and contains none of those. While this Court has the discretion to sanction Plaintiff for violating the local rule, *see* Local Rule 7.1(f) ("Failure to comply with these provisions may be sanctionable at the discretion of the Judicial Officer."), this Court elects not to do so.

harmless." Fed.R.Civ.P. 37(c)(1). This Rule "requires absolute compliance with Rule 26(a)." *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir.2003) (quoting *Vance v. United States*, 1999 WL 455435, at *3 (6th Cir. June 25, 1999)). When an expert report does not provide the required disclosures under Rule 26(a)(2)(B), "the sanction of exclusion is *automatic and mandatory* unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Johnson*, 325 F.3d at 782 (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir.1998)) (emphasis added); *see also Walbridge Aldinger Co. v. Aon Risk Servs., Inc. of Pennsylvania*, 2007 WL 1219036, at *1 (E.D.Mich. Apr. 25, 2007) (expert report containing only minor omissions—such as merely failing to disclose the expert's compensation—should not be struck under Rule 37(c)(1) because the minor harm caused to opposing party does not justify striking the report). The advisory committee notes to Rule 37 "strongly suggests that 'harmless' involves an honest mistake on the part of the party coupled with sufficient knowledge on the part of the other party." *Borg v. Chase Manhattan Bank U.S.A.*, 247 Fed.Appx. 627, 637 (6th Cir.2007) (citation omitted). The burden of proof is on the potentially sanctioned party to prove harmlessness or justification. *Johnson*, 325 F.3d at 782; *Salgado*, 150 F.3d at 741–42; *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir.2001); *Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999).

Reid's report fails to satisfy five of the six requirements listed in Rule 26(a)(2)(B). Since Plaintiff has not even attempted to show either justification or harmlessness to Defendants with respect to the myriad deficiencies in Reid's report, pursuant to Rule 37(c)(1), the Court hereby bars the use of the report.

## A. Rule 26(a)(2)(B)(i)

Rule 26(a) requires that an expert report contain "a *complete statement* of all opinions the witness will express *and the basis and reasons for them.*" Fed. R.Civ.P. 26(a)(2)(B)(i) (emphasis added). Reid's report fails to do so. First, Reid's report does not even attempt a complete statement of all bases and reasons for his ultimate conclusion. Reid's report involves comparing various aspects of the "RCO and CU Credit Union software." However, rather than disclosing all of the alleged similarities between the two softwares that he would presumably provide at trial, Reid lists only four similarities— some impermissibly nebulous[5]—and then states "I can name many other similarities that I notice when examining both softwares." (*See* Reid Report at 2.) Rule 26(a)(2)(B)(i) does not allow an expert to list only some of his reasons for a conclusion and then incorporate the remainder through an unrevealing catchall phrase-the

---

**5.** The complete text of Reid's examples is as follows: "For example, the account entry feature works exactly the same in the two softwares [Similarity # 1]. RCO put in a feature to allow the user the ability to over ride [sic] a wrong account number and the CU software has the same exact feature [Similarity # 2]. Core functions are the same [Similarity # 3] and the naming of the fields are similar throughout the programs [Similarity # 4]." (Reid Report at 2 (similarities not listed in

original).) The ominous "I can name many other similarities" sentence follows. (*Id.*)

The Court notes here that the third similarity—"[c]ore functions are the same"—is impermissibly vague, as Reid does not anywhere in his report or attachments to explain what a "core function" is or enumerate examples of a "core function." The first similarity is also nondescript, as Reid does not elaborate what he means when he says the feature "works exactly the same."

report must contain a "complete statement" of those bases and reasons.

Second, Reid's report wholly lacks reasoning from his alleged bases to his ultimate conclusion that "CU software was developed by copying the RCO software." (Reid Report at 2.) "[A]n expert opinion must 'set forth facts and, in doing so, outline a line of reasoning arising from a logical foundation.'" *Brainard v. Am. Skandia Life Assur. Corp.,* 432 F.3d 655, 664 (6th Cir.2005) (citation omitted). "The report must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions. It must explain factually why and how the witness has reached them." *Hilt v. S.F.C. Inc.,* 170 F.R.D. 182, 185 (D.Kan.1997). Reid woefully fails to provide any reasoning or logical support for his conclusions. Reid vaguely lists a sampling of "similarities" between the RCO and CU Interface softwares, but he never explains why the alleged similarities indicate actual copying of Plaintiff's software rather than that the softwares simply perform similar functions (and thus would be expected to function similarly). That the softwares perform similar functions would hardly be surprising, given that Plaintiff and Defendant CU Interface's softwares were both tailored to the needs of banks, credit unions, and other like institutions. Simply put, Reid's report lacks a "line of reasoning" and a "logical foundation" explaining how his (limited number of) stated similarities entail copying of Plaintiff's software.

Plaintiff's attempt to explain why Reid's report complies with Rule 26(a)(2)(B)(i) begs the question and is thus inadequate. Plaintiff's entire response is as follows: "Reid's two page summary sets forth Reid's opinions and the basis for it. Specifically, Reid describes the process employed in his analysis and the conclusions he reached. *See* Exhibit A. Reid's report complies with subsection (i)." (Pl. Mem.

Opp. Def. Mot. to Bar, at 13.) Plaintiff thus attempts to save a conclusory report with a nondescript, conclusory response to Defendants that features a general reference to a massive exhibit. Aside from the sheer irony of the situation (which is not lost on this Court), Plaintiff's uninformative and unconvincing response to the specific Rule 26(a)(2)(B)(i) deficiencies noted above is insufficient to save Reid's report.

**B. Rule 26(a)(2)(B)(ii)**

Rule 26(a)(2)(B)(ii) requires a report to contain "the data or other information considered by the witness in forming [his opinions]." Reid's report is even more lacking in this respect. First, Reid's report, while stating it compared "RCO and CU Credit Union software" (Reid Report at 2.), never specified which version of Plaintiff's software Reid was comparing. As recently as October 21, 2008, Plaintiff turned over *three* versions of the RCO–1 software from the years 2000, 2004, and 2008. (*See* Notice of Service by R.C. Olmstead, Inc., Doc. No. 60.) Surely the most important data considered by Reid in forming his opinion was Plaintiff's software, and his failure to include in his report which version of the software was considered is flatly unacceptable under the dictates of Rule 26(a)(2)(B).

Second, at no point in his report does Reid refer to screen shots he considered to justify his conclusions. In *Salgado,* the Seventh Circuit found an expert report to be deficient under Rule 26(a)(2)(B) where, among other things, it contained an index to the voluminous materials that the expert had reviewed, but "the index was not keyed to the various opinions that [the expert] had expressed." *Salgado,* 150 F.3d at 738. The lack of keying or reference between the opinions and the reviewed materials violated Rule 26(a)(2)(B)'s command to be "detailed and

complete." *Id.* at 741 n. 6. A district court in New Jersey held similarly when it found that several expert reports were deficient under Rule 26(a)(2)(B) because they "refer[red] to massive amounts of documents, [but] the opinions are expressed in vague terms *with few specific references." Reed v. Binder,* 165 F.R.D. 424, 430 (D.N.J. 1996) (emphasis added).

The situations in *Salgado* and *Reed* are identical to this case. Reid's report contains a voluminous 197–page attachment, with screen shots of RCO software consisting of 141 pages and screen shots of the Circa 2005 CUDP software consisting of 56 pages. None of these pages are keyed to any of Reid's assertions of similarity in his report.[6] Conversely, Reid never once makes specific references in his report to which screen shots he is using to justify any of his comparisons between the two softwares. Thus, Reid's report requires Defendants to trudge through 197 pages to find for themselves which page(s) support each of Reid's conclusions. Rule 26(a)(2)(B) requires far more than the lackluster effort put forward by Reid in this report.

Finally, and perhaps most importantly, Reid does not even attempt to disclose outside information considered in forming his conclusions. If conclusions in a report are based all or in part on facts not disclosed in the report, the report does not comply with Rule 26(a)(2)(B). *See, e.g., Reed,* 165 F.R.D. at 429 (finding a report Rule 26(a)(2)(B) deficient because, among other things, "there were many documents other than those disclosed in [the expert's]

report which he relied upon in reaching his conclusions"). Reid states that he arrived at his conclusions "[a]fter reviewing the screen shots *and listening to the details of the case."* (Reid Report at 2 (emphasis added).) However, Reid never states in his report what "details of the case" he considered. Even assuming that Defendants could determine through clairvoyance, reading tea leaves, or ESP what "details of the case" Reid considered, Reid also never states—in his report or the attached 197 pages—what materials he referenced to understand these "details."[7] While it is certainly true that an attorney may assist an expert in preparation of his report—presumably including providing background facts about the case—this does not in any way abrogate the unequivocal rule that a report must disclose all data and information considered by the expert. Fed.R.Civ.P. 26 Advisory Committee Notes (1993). Reid's failure to state what "details of the case" he considered in forming his opinions is unacceptable and further supports barring the use of his report.

Also unacceptable, and causing an additional problem under Rule 26(a)(2)(B)(i), is the fact that Reid never distinguishes which of his conclusions are based on review of the screen shots attached to his report and which are based on listening to the details of the case. Reid's failure to disclose what "details of the case" he considered, and his failure to provide any indication of how those details influenced his conclusions, are so prejudicial to De-

6. For example, in one of the few specific references in Reid's report, Reid states "the account entry feature works exactly the same in the two softwares." (Reid Report at 2.) The report makes no reference to where in the 197–page attachment Defendants should refer in order to verify this statement. Similarly, the attachment pages have no labels that would indicate to which conclusion in the report they would correspond.

7. Plaintiff has not made the argument here that the expert report should still be preserved because Plaintiff's counsel turned over to Defendants everything given to them by the expert, and thus Plaintiff has satisfied its obligations under Rule 26(a)(2). In the event Plaintiff decides to raise this argument later, still this would not excuse noncompliance. *Reed,* 165 F.R.D. at 430 n. 10; *Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 681 (D.Kan.1995).

fendants as to, in and of themselves, merit exclusion of his report.

Plaintiff argues that Reid's report is compliant with Rule 26(a)(2)(B) because it "identifies the 'data he reviewed,'" namely, "the two software programs." (Pl. Mem. Opp. Def. Mot. to Bar, at 14.) Somehow, Plaintiff believes that this alone is sufficient to render Reid's report compliant with Rule 26(a)(2)(B)(ii). Aside from the fact that Reid's report fails to specify which version of Plaintiff's software he used as data, Plaintiff has offered no justification for Reid's failure to mention which "details of the case he considered" or his lack of any references to the screen shots or outside details he used to form any of his several specific conclusions in the report. Thus, despite Plaintiff's attempt to render Reid's report Rule 26(a)(2)(B)(ii) compliant in two conclusory sentences, Reid's report still fails an essential requirement of Rule 26(a).

### C. Rule 26(a)(2)(B)(iii)

Plaintiff does not seem to give any indication that Reid, if called to testify, would refer to any exhibits in his testimony. It is reasonable to suppose, however, that were Reid to testify, he would refer to some of the 197 pages of screen shots given with the report. Thus, Rule 26(a)(2)(B)(iii) appears to be either inapposite or satisfied. Reid's report therefore does not violate Rule 26(a)(2)(B)(iii).

### D. Rule 26(a)(2)(B)(iv)

■ Rule 26(a) requires that an expert report contain "the witness's qualifications, including a list of all publications authored in the previous 10 years." Fed.R.Civ.P. 26(a)(2)(B)(iv). Reid's report contains information about his employment (Reid Report at 1–2.), but very little about why his previous and current jobs qualify him as

an expert to determine whether CU Interface wrongfully copied Plaintiff's software.[8] *Compare Sylla–Sawdon v. Uniroyal Goodrich Tire Co.,* 47 F.3d 277, 282 (8th Cir. 1995) (expert report invalid under Rule 26(a)(2)(B) because, even though affidavit and curriculum vitae disclosed substantial knowledge in mechanical engineering and racing car tires, they "did not divulge any direct professional experience in tire manufacture or tire failure analysis," which was the subject of the expert report). He also fails to include any mention of his education, academic or technical. Finally, Reid's report does not list what publications, if any, he has authored in the past 10 years. Thus, Reid's report is deficient under Rule 26(a)(2)(B)(iv).

Plaintiff argues that Reid's report complies with Rule 26(a)(2)(B)(iv) because it describes his professional experience. (Pl. Mem. Opp. Def. Mot. to Bar, at 14.) Plaintiff also notes that it provided Reid's full resume in advance of his full report. (*Id.*) The first argument does not prove enough. While Reid's report describes his professional experience, it lacks any mention of either his publications, if any, or his educational background, both of which are highly relevant to his qualifications as an expert. Moreover, just as in *Sylla–Sawdon,* Reid's report provides no reason why his prior and present employment, which he concedes does not entail any knowledge of software code, somehow qualifies him to determine whether CU Interface wrongly copied Plaintiff's software.

Meanwhile, Plaintiff's second argument is simply absurd. The plain language of Rule 26(a)(2)(B)(iv) states: "*Unless otherwise stipulated or ordered by the court* [ . . . ] [t]he *report* must contain [ . . . ] the witness's qualifications [ . . . ]*" (emphasis added). Courts have followed the plain

---

8. This is especially true given that Reid states in his report: "I do not know how to write code for software or know how to read it." (Reid Report at 2.)

language accordingly. *See, e.g., Hilt,* 170 F.R.D. at 185 (expert report did not satisfy Rule 26(a)(2)(B)(iv) where plaintiff offered a curriculum vitae of an expert but did not attach it to the expert's report). Plaintiff cannot avoid the requirements of Rule 26(a)(2)(B) by providing information in resumes prior to the report unless Defendants stipulate to it or this Court orders it. Neither has occurred in this case.

### E. Rule 26(a)(2)(B)(v)

An expert must list all other cases in which he has testified, at trial or by deposition, during the previous four years. Fed.R.Civ.P. 26(a)(2)(B)(v). Apparently Reid has never provided expert testimony in any case; however, this important fact is nowhere to be found in Reid's report. Thus, Reid's report does not comply with yet another section of Rule 26(a).[9]

### F. Rule 26(a)(2)(B)(vi)

Finally, an expert must state his "compensation to be paid for the study and testimony in the case." Fed.R.Civ.P. 26(a)(2)(B)(vi). Reid's report lacks any mention of this required information.

### G. Plaintiff has not proven that its noncompliance was harmless or justified.

■ The burden of proof is on the potentially sanctioned party to prove harmlessness or justification. *Johnson,* 325 F.3d at 782; *Salgado,* 150 F.3d at 741–42; *Wilson,* 250 F.3d at 21; *Heidtman,* 171 F.3d at 1040. Plaintiff has not shown harmlessness or justification, and thus the sanction of barring Plaintiff's expert report will be employed. Plaintiff's only argu-

ment that even resembles an attempt at showing harmlessness suggests that Reid's report should not be excluded because "Defendants' [sic] filed the instant Motion without taking Reid's deposition." (Pl. Mem. Opp. Def. Mot. to Exclude, at 15.) This fact is irrelevant. "[An expert] report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial." *Salgado,* 150 F.3d at 735. Plaintiff's suggestion that Defendants are obligated to depose Plaintiff's expert in order to clear up ambiguities in his report ignores the purposes for which Rule 26(a)(2)(B) exists—to avoid trial-by-surprise and to avoid wasting unnecessary resources. The legion deficiencies of Reid's report are both inexcusable and prejudicial to Defendants, and this Court will not compel Defendants to face a Morton's Fork of expending unnecessary sums to depose Reid or attempting to decipher Reid's incomplete report. Thus, as Defendants have clearly experienced prejudice from Reid's report, *see Reed,* 165 F.R.D. at 430 ("Nothing causes greater prejudice than to have to guess how and why an adversarial expert reached his or her conclusion."), and Plaintiff has failed to satisfy its burden of proof of justification or harmlessness, this Court bars the use of Reid's report in accordance with Rule 37(c)(1).

### H. Reid's Declaration does not save his report from Rule 26(a) noncompliance.

Plaintiff, in a last-ditch effort to render Reid's report Rule 26(a) compliant, offers a Declaration of Robert J. Reid as an Exhibit to its Memorandum in Opposition.[10]

---

**9.** To argue that Reid's report is compliant with both Rules 26(a)(2)(B)(v) and (vi), Plaintiff incorporates its argument that Reid's report is Rule 26(a) compliant because Plaintiff provided Defendants with Reid's resume before disclosure of the report. This Court in-

corporates is previous response to this argument.

**10.** Apparently Plaintiff must have known that Reid's report had serious Rule 26(a)(2)(B) compliance problems, else there would be no reason to offer this Declaration.

The Declaration contains essentially the same information as Reid's report, except that it refers to specific screen shots to justify some of Reid's allegations of "similarities" that were previously unsupported in Reid's report.

■ Reid's Declaration cannot be considered because it was filed after the due date for Plaintiff's disclosure of expert reports. *River City Capital, LP v. Bd. of Cty. Comm'rs*, 491 F.3d 301, 309 (6th Cir. 2007). In *River City*, the plaintiff supplied an expert report prior to the expert disclosure deadline but conceded that the report was deficient under Rule 26. *Id.* at 305. Three weeks after the expert disclosure deadline, the plaintiff offered a supplemental report from the same expert that complied with Rule 26. *Id.* The district court sanctioned the plaintiff for failure to provide a Rule 26(a) compliant expert report, *id.*, and the Sixth Circuit affirmed, *id.* at 309.

The facts of this case are almost identical to that of *River City*. Here, Plaintiff filed a non-compliant expert report prior to its expert disclosure deadline and then attempted to supplement the expert report with a Declaration nearly six weeks later— and after a motion to bar the use of the report was filed—to render it Rule 26(a)(2)(B) compliant. Just like the court in *River City*, this Court will not consider Plaintiff's untimely Declaration.[11]

### III. CONCLUSION

For the aforesaid reasons, Defendants' Joint Motion to Bar Plaintiff's Use of the

Robert Reid Report, Doc. No. 55, is GRANTED.[12]

**IT IS SO ORDERED.**

---

11. The Court notes that, even if Reid's Declaration was considered, many of the aforesaid deficiencies still exist, and thus Reid's report should be barred under Rule 26(a) regardless. As one example, Reid's Declaration still does not identify what "details of the case" he considered in order to formulate his conclu-sions, and he never points to specific materials that provided him with those "details."

12. The Court finds that Reid's report fails to satisfy the requirements of Rule 26(a)(2)(B). Thus, this Court declines to address Defendants' argument to exclude the report under the Federal Rules of Evidence.